**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, and LIBERTY MUTUAL GROUP, INC.<br><br>Plaintiffs,<br><br>v.<br><br>PHOENIX LICENSING, L.L.C. and LPL LICENSING, L.L.C.,<br><br>Defendants. | Civil Case No. 1:11-cv-01507-JDB<br><br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS LIBERTY MUTUAL PERSONAL INSURANCE COMPANY AND LIBERTY MUTUAL GROUP'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NOS. 6,999,938 AND 7,890,366 FOR CLAIMING SUBJECT MATTER UNPATENTABLE UNDER 35 U.S.C. § 101**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7, Plaintiffs Liberty Mutual Personal Insurance Company and Liberty Mutual Group, Inc. ("Plaintiffs") respectfully submit this Motion For Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,999,938 ("the '938 Patent") And 7,890,366 ("the '366 Patent") For Claiming Subject Matter Unpatentable Under 35 U.S.C. § 101 ("the Motion").

In support of this Motion, Plaintiffs are filing, contemporaneously herewith, (i) Plaintiffs' Memorandum In Support Of Their Motion For Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,999,938 And 7,890,366 For Claiming Subject Matter Unpatentable Under 35 U.S.C. §

101; (ii) Plaintiffs' Statement of Uncontroverted Material Facts In Support Of Their Motion For Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,999,938 And 7,890,366 For Claiming Subject Matter Unpatentable Under 35 U.S.C. § 101, pursuant to Local Rule 7(h)(1); (iii) the Declaration of James R. Myers In Support Of Plaintiffs' Motion For Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,999,938 And 7,890,366 For Claiming Subject Matter Unpatentable Under 35 U.S.C. § 101; and (iv) a proposed order, pursuant to Local Rule 7(c).

For the reasons set forth in Plaintiffs' accompanying Memorandum In Support Of Their Motion For Summary Judgment, Plaintiffs respectfully request that the Court grant their motion for summary judgment that the claims of the '938 and '366 Patents are invalid for claiming unpatentable subject matter.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Local Rule 7(f), Plaintiff respectfully requests oral argument on the matter to aid in resolution of this Motion.

Respectfully submitted,

By: /s/ James R. Myers

Dated: October 19, 2011

James R. Myers (D.C. Bar No. 231993)
ROPES & GRAY, LLP
One Metro Center
700 12th Street
Washington, DC 20005
Telephone:  (202)-508-4600
Facsimile:  (202)-508-4650
James.Myers@ropesgray.com

Attorneys for Plaintiffs,
Liberty Mutual Personal Insurance
Company and Liberty Mutual Group, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, and LIBERTY MUTUAL GROUP, INC., | Civil Case No. 1:11-cv-01507-JDB |
| Plaintiffs, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| PHOENIX LICENSING, L.L.C. and LPL LICENSING, L.L.C., | |
| Defendants. | |

**PLAINTIFFS LIBERTY MUTUAL PERSONAL INSURANCE COMPANY AND LIBERTY MUTUAL GROUP, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NOS. 6,999,938 AND 7,890,366 FOR CLAIMING SUBJECT MATTER UNPATENTABLE UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

**PAGE**

I.    **INTRODUCTION** ................................................................................ 1

II.    **LEGAL STANDARDS** ...................................................................... 4

    A.    The Standard For Summary Judgment ................................................4

    B.    The Standard For Patentable Subject Matter Under Section 101 ............5

    C.    The Machine-Or-Transformation Test....................................................7

        1.    "Machine" ...............................................................................9

        2.    "Transformation" ....................................................................9

III.    **PLAINTIFFS' SUMMARY JUDGMENT MOTION IS RIPE FOR DECISION AT THIS TIME**.............................................................. 10

IV.    **THE '938 AND '366 PATENTS** ...................................................... 12

    A.    The '938 Patent ...................................................................................12

    B.    The '366 Patent ...................................................................................14

V.    **PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY OF THE '938 AND '366 PATENTS AS A MATTER OF LAW** ................................ 15

    A.    The Claims Of The '938 And '366 Patents Fail The Machine-Or-Transformation Test....................................................................15

        1.    The Claims Of The '938 And '336 Patents Are Not Tied To A Particular Machine .................................................................15

        2.    The Claims Of The '938 And '366 Patents Do Not Transform An Article ......................................................................24

    B.    The Claims Of The '938 And '366 Patents Are Drawn To An Abstract Idea.......................................................................................26

        1.    Automatically Generating Customized Marketing Communications Is An Abstract Idea—An Unpatentable Basic Business Concept.............26

        2.    The Claims Remain Invalid Under Section 101 Even Though A *Minority* Of Claims May Involve A General Purpose Computer.............29

        3.    Neither Specific Applications Of An Abstract Idea, Nor Field-Of-Use Limitations, Avoid Invalidity Under Section 101 ..............31

VI.    **CONCLUSION** .............................................................................. 33

i

# TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
   691 F. Supp. 2d 577 (D. Del. 2010)................................................................22, 23

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................4

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008)................................................................3

*Ass'n For Molecular Pathology v. U.S. Patent & Trademark Office*,
   No. 2010-1406, 2011 WL 3211513 (Fed. Cir. July 29, 2011)................................10

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*,
   771 F. Supp. 2d 1054 (E.D. Mo. 2011)..............................................11, 18, 28, 31

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
   731 F.2d 831 (Fed. Cir. 1984)................................................................4

\* *Bilski v. Kappos*,
   130 S. Ct. 3218 (2010).................................................................. *passim*

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................4

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*,
   145 F.3d 1303 (Fed. Cir. 1998)................................................................19

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   Nos. 2006-1634 & 2006-1649, 2011 U.S. App. LEXIS 18126
   (Fed. Cir. Aug. 31, 2011)................................................................24, 28

\* *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   768 F. Supp. 2d 221 (D.D.C. 2011).................................................... *passim*

*CyberSource Corp. v. Retail Decisions, Inc.*,
   620 F. Supp. 2d 1068 (N.D. Cal. 2009), *aff'd*, No. 2009-1358,
   2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011) ...........................5, 12, 24

\* *CyberSource Corp. v. Retail Decisions, Inc.*,
   No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011) .................... *passim*

*DealerTrack, Inc. v. Huber*,
   657 F. Supp. 2d 1152 (C.D. Cal. 2009) .........................................................17, 22

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ........................................................................................6

*Every Penny Counts, Inc. v. Bank of Am. Corp.*,
  No. 2:07-cv-042, 2009 WL 6853402 (M.D. Fla. May 27, 2009) ..........................18

*Ex Parte Enenkel*,
  No. APL 2008-2239, 2009 WL 924475 (B.P.A.I. Apr. 6, 2009)............................17

*Fort Props., Inc. v. Am. Master Lease, LLC*,
  609 F. Supp. 2d 1052 (C.D. Cal. 2009) .............................................................25

*FuzzySharp Techs. Inc. v. 3D Labs, Inc.*,
  No. C-07-5948, 2009 U.S. Dist. LEXIS 115493 (N.D. Cal. Dec. 11, 2009)............5, 11, 17

*Glory Licensing LLC v. Toys "R" Us, Inc.*,
  No. 09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011)....................................8, 11

* *Gottschalk v. Benson*,
  409 U.S. 63 (1972)................................................................................. *passim*

* *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*,
  No. 07-796, 2010 WL 6274263 (D.D.C. Aug. 27, 2010) .................................. *passim*

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008).......................................................................21

* *In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008), *aff'd*, 130 S. Ct. 3218 (2010) ....................... *passim*

*In re Ferguson*,
  558 F.3d 1359 (Fed. Cir. 2009).....................................................................9, 25

*King Pharms., Inc. v. Eon Labs*,
  616 F.3d 1267 (Fed. Cir. 2010)..........................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).........................................................................................4

* *Parker v. Flook*,
  437 U.S. 584 (1978)................................................................................ *passim*

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
  No. CV 07-80286, 2008 U.S. Dist. LEXIS 108392 (S.D. Fla. Oct. 24, 2008),
  *aff'd*, 587 F.3d 1324 (Fed. Cir. 2009) ...........................................................5, 28

*Prometheus Labs., Inc. v. Mayo Collaborative Servs.*,
  628 F.3d 1347 (Fed. Cir. 2010)..........................................................................8

iii

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
 346 F.3d 1057 (Fed. Cir. 2003)..................................................................................4

\* *Ultramercial, LLC v. Hulu, LLC*,
 No. 2010-1544, 2011 U.S. App. LEXIS 19048 (Fed. Cir. Sept. 15, 2011) ..............4, 5, 12, 29


**STATUTES**                                                                        **PAGE(S)**

35 U.S.C. § 101 (2006) ..............................................................................................6

35 U.S.C. § 282 (2006) ..............................................................................................4

\* Indicates those cases or authorities on which Plaintiffs chiefly rely, purusant to Local Civil
 Rule 7(a).

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(a), Plaintiffs Liberty Mutual Personal Insurance Company and Liberty Mutual Group, Inc. ("Plaintiffs") respectfully submit this Memorandum In Support Of Their Motion For Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,999,938 ("the '938 Patent") And 7,890,366 ("the '366 Patent") For Claiming Subject Matter Unpatentable Under 35 U.S.C. § 101 (the "Motion").   A Statement of Uncontroverted Material Facts In Support Of Their Motion For Summary Judgment Of Invalidity Of U.S. Patent Nos. 6,999,938 And 7,890,366 For Claiming Subject Matter Unpatentable Under 35 U.S.C. § 101, pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 7(h)(1) ("SOF"), is filed concurrently herewith.

## I.   INTRODUCTION

Defendants' patents concern an extraordinarily simple and abstract idea—the idea of sending personalized communications to customers.  But human beings have been in the practice of sending personalized communications, *e.g.*, letters, to others for thousands of years, dating back to ancient times.  The idea of sending a personalized letter has never been patentable and is not so now.  The sole "innovation" claimed by Defendants is that, in their own words, they can send *more* personalized communications *more* quickly and *more* cheaply by "automatically" generating those communications.  (SOF ¶¶ 28, 44; Ex. 1, '938 Patent at Col. 1:14-25 ("The present invention … relates to methods and apparatus suitable for preparing an appropriately customized reply communication to each client in a fully automated or significantly automated manner permitting large numbers (millions) of communications to be prepared and delivered quickly, efficiently, and cost effectively."); Ex. 2, '366 Patent at Col. 1:19-28).   Sending personalized communications using any automated process or system—the sole concept claimed in the '938 and '366 Patent claims—is an abstract idea that is not patent eligible.  Indeed, a claimed process that is directed to an abstract idea "is unpatentable under § 101 if a patent on

that claim would preempt use of the abstract idea and have the practical effect of being a patent on the abstract idea itself." *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*, No. 07-796, 2010 WL 6274263, at *5 (D.D.C. Aug. 27, 2010) (Mag. Kay); *see also id.* at *6-7 ("[T]he claim is so abstract and sweeping ... [that it could] be performed through any existing or future-devised machinery, or even without an apparatus.") (citation omitted); *cf. Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972) ("The mathematical formula involved here has no substantial practical application except in connection with a digital computer, which means that if the judgment below is affirmed [and the patent is held valid under Section 101], the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself."); *CyberSource Corp. v. Retail Decisions, Inc.*, No. 2009-1358, 2011 U.S. App. LEXIS 16871, at *12-19 (Fed. Cir. Aug. 16, 2011) (hereinafter *CyberSource II*) (finding unpatentable claim directed to "obtaining information," "constructing a map," and "utilizing the map" to be "so broadly worded that [the claim] encompasses literally *any* method for detecting fraud based on the gathered transaction and Internet address data") (emphasis in original).

Not all clever ideas qualify for a patent. Congress and the Supreme Court have decreed that only certain types of ideas are patentable subject matter under 35 U.S.C. § 101. To this end, it is well established that patent protection does not extend to abstract ideas. And in a recent attempt to clarify the scope of patent protection under Section 101, the Federal Circuit and the Supreme Court, in a case referred to as "*Bilski*," reinforced this long-standing exclusion of abstract ideas from the scope of patentable subject matter. The *Bilski* decisions also confirmed the continued applicability of the "machine-or-transformation" test as a guide in determining patent eligible subject matter. *Bilski v. Kappos*, 130 S. Ct. 3218, 3227 (2010).

Here, like the "risk hedging" patent at issue and held invalid in *Bilski*, the asserted patents' various permutations of "automatically preparing" customized communications and replies as part of a mass marketing campaign fall far short of the *Bilski* tests.  Specifically, the '938 Patent claims steps such as "selecting" information, "preparing" a communication, "delivering" a communication, and "receiving" a communication.  Similarly, the '366 Patent claims steps such as "providing" communication content, "preparing" a communication, and "generating" successive communications.  These claim steps are not tied to any particular machine or apparatus, nor do they transform a particular article into a different state or thing. The recitation of a general purpose "computing system," a "means" for performing these steps, or a "computer readable medium" (*i.e.*, software) in some claims of the patents-in-suit does not resuscitate these patents.  *See CyberSource II*, 2011 U.S. App. LEXIS 16871, at *25-26 ("[M]erely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test.").  Rather, the '938 and '366 Patents are directed to the abstract idea of improving marketing campaigns by providing automated customized communications or replies, which is an unpatentable "basic business or financial concept."  *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 768 F. Supp. 2d 221, 243 (D.D.C. 2011).  As such, the patents-in-suit do not claim patent eligible subject matter.

Summary judgment is proper at this time even though claim construction and discovery have not yet occurred.  To be sure, there is no need for months of protracted proceedings in this case because no reasonable construction of the claim terms will bring the patent claims within the scope of Section 101.  As this Court recognized in *Graff/Ross Holdings* and *CLS Bank*, Section 101 is a defense to infringement that is properly addressed on summary judgment, even

before claim construction. *Graff/Ross Holdings*, 2010 WL 6274263, at *2; *CLS Bank*, 768 F. Supp. 2d 221. Consistent with this Court's practice, the Federal Circuit recently confirmed that "claim construction may not always be necessary for a § 101 analysis," *Ultramercial, LLC v. Hulu, LLC*, No. 2010-1544, 2011 U.S. App. LEXIS 19048, at *4-5 (Fed. Cir. Sept. 15, 2011), and recently affirmed a grant of summary judgment of invalidity under Section 101 prior to claim construction. *See CyberSource II*, 2011 U.S. App. LEXIS 16871. Thus, Plaintiffs' Motion should be granted because there is no genuine dispute of material fact that the claims of the asserted patents fail to claim subject matter patentable under 35 U.S.C. § 101.

## II.     LEGAL STANDARDS

### A.     The Standard For Summary Judgment

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact" and no reasonable jury could return a verdict in favor of the nonmoving party. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] Once the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). And because a patent is presumed to be valid, clear and convincing evidence is required to establish invalidity of patent claims. *See* 35 U.S.C. § 282 (2006); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003); *CLS Bank*, 768 F. Supp. 2d at 233. In assessing the motion, the Court views the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] "Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

Summary judgment is an appropriate vehicle to determine questions of patentable subject matter under 35 U.S.C. § 101 even before discovery and claim construction are undertaken. *See Ultramercial*, 2011 U.S. App. LEXIS 19048, at *4-5 ("[C]laim construction may not always be necessary for a § 101 analysis."); *CyberSource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009) (hereinafter *CyberSource I*) ("In this case, ruling on defendant's section 101 [summary judgment] motion does not require that the claims actually be construed."), *aff'd*, No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011); *Graff/Ross Holdings*, 2010 WL 6274263, at *2 ("Section 101 is a 'defense' to the claim of infringement and is more appropriately disposed of on a motion for summary judgment."); *CLS Bank*, 768 F. Supp. 2d at 223 (granting summary judgment of invalidity under Section 101 although the claims had not been construed); *FuzzySharp Techs. Inc. v. 3D Labs, Inc.*, No. C-07-5948, 2009 U.S. Dist. LEXIS 115493, at *7 n.1 (N.D. Cal. Dec. 11, 2009) (same); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, No. CV 07-80286, 2008 U.S. Dist. LEXIS 108392, at *24-29 (S.D. Fla. Oct. 24, 2008) (same), *aff'd*, 587 F.3d 1324 (Fed. Cir. 2009).

**B.      The Standard For Patentable Subject Matter Under Section 101**

This Court recognizes that a patent must be directed to patentable subject matter as a "threshold" requirement for patentability. *CLS Bank*, 768 F. Supp. 2d at 233; *see also Bilski*, 130 S. Ct. at 3225. Determining whether this threshold is met is a question of law. *CLS Bank*, 768 F. Supp. 2d at 232. In determining whether claims satisfy the requirements of Section 101, the claims must be "considered as a whole." *Bilski*, 130 S. Ct. at 3258 (citing *Diamond v. Diehr*, 450 U.S. 175, 192 (1981)).

Section 101 of the Patent Act states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of

this title." 35 U.S.C. § 101 (2006).  As computers advanced, technologies developed that did not

fit neatly into the categories of "process, machine, manufacture, or composition of matter."

Numerous Supreme Court cases wrestled with the issue of when, to what extent, and in what

context software and algorithms might be patentable.  *See, e.g.*, *Benson*, 409 U.S. at 72; *Parker*

*v. Flook*, 437 U.S. 584, 588-92 (1978);  *Diamond v. Diehr*, 450 U.S. 175, 175 (1981).  These

cases found that laws of nature, physical phenomena, and abstract ideas, collectively referred to

as "fundamental principles," are not patentable.  *See Benson*, 409 U.S. at 67 ("Phenomena of

nature, though just discovered, mental processes, and abstract intellectual concepts are not

patentable, as they are the basic tools of scientific and technological work."); *Flook*, 437 U.S. at

586 (holding that claims directed to calculation of an "alarm limit" were not patentable); *cf.*

*Diehr*, 450 U.S. at 181 (finding claims directed to a process of transforming raw rubber into

molded, cured rubber were patentable).

     The Federal Circuit recently confirmed this longstanding rule that abstract ideas are not

patentable under Section 101.  *CyberSource II*, 2011 U.S. App. LEXIS 16871, at *12-19 (finding

unpatentable claim directed to "obtaining information," "constructing a map," and "utilizing the

map" to be "so broadly worded that [the claim] encompasses literally *any* method for detecting

fraud based on the gathered transaction and Internet address data") (emphasis in original).  The

Federal Circuit also confirmed that claims purportedly drawn to a "manufacture," for example,

claims directed to "[a] computer readable medium …" that performed various method steps,

should be treated as process claims for purposes of the Section 101 analysis when the claims

fundamentally concern method steps, not an item of manufacture for storing computer-readable

information.  *Id.* at *19-24 (citing *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982)).  Indeed, the court

"look[s] to the underlying invention," not to what statutory category a claim's language is crafted

to literally invoke, for patent-eligibility purposes.  *Id.* at *19-24 (finding claims directed to a "computer readable medium" were drawn to a ***method*** of fraud detection and were unpatentable under Section 101).

As this Court recently noted, the Section 101 prohibition against patenting abstract ideas "cannot be circumvented by limiting the claim to a particular technological environment or adding insignificant post-solution activity."  *Graff/Ross Holdings*, 2010 WL 6274263, at *3 (citing *Bilski*, 130 S. Ct. at 3230).  Rather, a claimed process that is directed to an abstract idea "is unpatentable under § 101 if a patent on that claim would preempt use of the abstract idea and have the practical effect of being a patent on the abstract idea itself."  *Id.* at *5; *see also Benson*, 409 U.S. at 71-72; *Flook*, 437 U.S. at 586 (holding that claims directed to computing an "alarm limit" were unpatentable because the applicant sought merely to protect a formula for computing an alarm limit, which is simply a number).  This Court has repeatedly held that such an attempt to patent abstract ideas is not permitted.  *See Graff/Ross Holdings*, 2010 WL 6274263, at *7 (finding that claims reciting "[c]omputing a price to sell fixed income assets and generating a financial analysis" were directed to an abstract idea and noting that "general economic concepts [] cannot be patented"); *CLS Bank*, 768 F. Supp. 2d at 243-44, 252 (finding method and system claims directed to employing an intermediary to facilitate simultaneous exchange of obligations to be an unpatentable abstract idea).

### C.    The Machine-Or-Transformation Test

One way of determining whether a patent is directed to an abstract idea is through application of the machine-or-transformation test.  While not the sole test for patentability, the Supreme Court in *Bilski* noted that the test remains a "useful and important clue" to determining patentability under Section 101.  *Bilski*, 130 S. Ct. at 3227.  Following the Supreme Court's decision in *Bilski*, courts have continued to recognize the machine-or-transformation test as one

means of assessing patentability.  *See Prometheus Labs., Inc. v. Mayo Collaborative Servs*., 628 F.3d 1347, 1355 (Fed. Cir. 2010) (applying the machine-or-transformation test); *King Pharms., Inc. v. Eon Labs*, 616 F.3d 1267, 1278 (Fed. Cir. 2010) ("We therefore understand the Supreme Court to have rejected the exclusive nature of our [machine-or-transformation] test, but not necessarily the wisdom behind it."); *Graff/Ross Holdings*, 2010 WL 6274263, at *4-7; *CLS Bank*, 768 F. Supp. 2d at 234 (considering the machine-or-transformation test when finding claims invalid under Section 101); *Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252, 2011 WL 1870591, at *1, *3-4 n.9 (D.N.J. May 16, 2011) (holding claims directed to methods and systems for "processing information from a template file to an application program" failed the machine-or-transformation test and were also directed to an abstract idea, *i.e.*, "the basic idea that information can be extracted from a document and adapted to fill an application format").

A claim satisfies the machine-or-transformation test where "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing."  *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008), *aff'd*, 130 S. Ct. 3218 (2010).  The test requires more than the mere recitation of a machine or a transformation in the language of the claim.  Rather, the machine or transformation "must impose meaningful limits on the claim's scope." *Id*. at 961. Insignificant extra-solution activity involving a machine or resulting in a transformation will not render an unpatentable principle a patentable process.  *See id*.  "Field of use" limitations are similarly insufficient.  *Id*. at 957 ("Pre-emption of all uses of a fundamental principle in all fields and pre-emption of all uses of the principle in only one field both indicate that the claim is not limited to a particular application of the principle."); *see, e.g.*, *Flook*, 437 U.S. at 586 (holding claims directed to calculation of an "alarm limit" for signaling dangers in operating a catalytic

converter unpatentable though they did not "cover every conceivable application of the formula").

           1.      **"Machine"**

A "machine" is a "concrete thing, consisting of parts, or of certain devices and combination of devices." *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) (citations and quotations omitted). In order to satisfy the machine prong of the machine-or-transformation test, the method or process must be "tied to a ***particular*** machine" or to a "***specific*** machine or apparatus" in a way that limits the claims in a meaningful way. *In re Bilski*, 545 F.3d at 961-62 (emphasis added). The fact that a claimed invention can only be carried out using some sort of non-specific machine is, alone, insufficient to satisfy the machine prong. *See CLS Bank*, 768 F. Supp. 2d at 236-37 ("[N]ominal recitation of a general-purpose computer in a method claim does not tie the claim to a particular machine or apparatus or save the claim from being found unpatentable under § 101."); *Graff/Ross Holdings*, 2010 WL 6274263, at *6-7 ("[T]he claim is so abstract and sweeping ... [that it could] be performed through any existing or future-devised machinery, or even without an apparatus.") (citation omitted). Furthermore, claims directed to software for performing a process are not patentable merely by virtue of reciting a "computer readable medium" (*i.e.*, software) or a general purpose computer on which software runs. In *CyberSource II*, the Federal Circuit found that claims directed to a "computer readable medium" were unpatentable because "the incidental use of a computer to perform the mental process of claim 3 does not impose a sufficiently meaningful limit on the claim's scope." *CyberSource II*, 2011 U.S. App. LEXIS 16871, at *25.

           2.      **"Transformation"**

Where a process is not tied to a particular machine, it may be patentable nevertheless if it transforms an article into a different state or thing. *Benson*, 409 U.S. at 70. However, the

transformation must be central to the claimed process. *In re Bilski*, 545 F.3d at 962. A transformation that is "merely incidental" to the claimed process or which constitutes extra-solution activity does not constitute a meaningful limitation to the claims and will not satisfy the transformation prong. *See CLS Bank*, 768 F. Supp. 2d at 235. Furthermore, "[p]urported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or **other such abstractions** cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *In re Bilski*, 545 F.3d at 963-64 (emphasis added) (holding that claims directed to a process of hedging involving exchanging options, "which are simply legal rights," did not involve a patentable transformation because no physical object or substance was transformed); *see also CyberSource II*, 2011 U.S. App. LEXIS 16871, at *10 ("The mere collection and organization of data regarding credit card numbers and Internet addresses is insufficient to meet the transformation prong of the test."); *CLS Bank*, 768 F. Supp. 2d at 235 (finding claims directed to exchanging obligations did not involve a transformation even though data "would necessarily have to be manipulated" and a hard drive would be transformed "on a microscopic level … by the process of magnetizing or demagnetizing part of a hard disk drive platter corresponding to a bit of data"); *Ass'n For Molecular Pathology v. U.S. Patent & Trademark Office*, No. 2010-1406, 2011 WL 3211513, at *22 (Fed. Cir. July 29, 2011) (finding claims directed to "comparing" and "analyzing" information failed to satisfy the machine-or-transformation test).

## III.   PLAINTIFFS' SUMMARY JUDGMENT MOTION IS RIPE FOR DECISION AT THIS TIME

Liberty Mutual Personal Insurance Company filed its declaratory judgment complaint in this case on August 19, 2011. (Dkt. No. 1). On October 11, 2011, Plaintiffs filed an Amended Complaint For Declaratory Judgment, which included Liberty Mutual Group, Inc. as a Plaintiff.

(Dkt. No. 15).   Although this case is in its early stages, summary judgment on Section 101 grounds is ripe for decision.   As this Court, the Federal Circuit, and many other district courts have recognized, summary judgment of invalidity under 35 U.S.C. § 101 may be granted even though claim construction and discovery have not yet occurred.

In *Graff/Ross Holdings*, this Court recognized that Section 101 is a defense to infringement that is properly addressed by summary judgment, even before claim construction. There, the Court noted that "it is unnecessary to construe the terms before deciding the issue of validity," and bypassed claim construction in resolving the pending motion.   2010 WL 6274263, at *2; *see also CLS Bank*, 768 F. Supp. 2d at 223 (granting plaintiffs' motion for summary judgment of invalidity under Section 101 although the claims had not been construed).   This comports with the practice of other district courts that have recognized that issues of invalidity under Section 101 may be resolved early in the case.   *See Glory Licensing*, 2011 WL 1870591, at *4 (granting motion to dismiss on Section 101 grounds); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 771 F. Supp. 2d 1054, 1059 (E.D. Mo. 2011) (granting summary judgment of invalidity under Section 101 and noting that "[t]he Court has decided to address Sun Life's § 101 arguments before proceeding with claims construction"); *FuzzySharp Techs, Inc.*, 2009 U.S. Dist. LEXIS 115493, at *6-7 n.1 (same).

Consistent with the practice of this Court, the Federal Circuit recently **confirmed** that patentability under Section 101 may be considered at this stage of the case, stating that "[t]his court has never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility…. [C]laim construction may not always be necessary for a

§ 101 analysis." *Ultramercial*, 2011 U.S. App. LEXIS 19048, at *4-5.[2]   The Federal Circuit's

approach in *Ultramercial* necessarily follows the Supreme Court's mandate that the Section 101

analysis focus on the claimed subject matter as a whole.  *Bilski*, 130 S. Ct. at 3230.   Indeed,

when evaluating Section 101, this Court must consider the claimed **invention as a whole**, not

interpret each and every claim term in isolation.   Nonetheless, as discussed below, no reasonable

claim construction exists that could save the patent claims from their status as abstract ideas.

Thus, Plaintiffs' Motion should be granted at this time because there is no genuine

dispute of material fact that the claims of the asserted patents claim subject matter unpatentable

under 35 U.S.C. § 101.   Such a determination can be made at this stage in the case because

neither discovery nor claim construction can alter the nature of the claims as directed to an

abstract idea that fails the machine-or-transformation test, and the inevitable conclusion of

invalidity.

## IV.   THE '938 AND '366 PATENTS

### A.      The '938 Patent

The '938 Patent, entitled "Automated Reply Generation Direct Marketing System,"

explains that "[t]he importance of widely-distributed written or printed client communications

such as advertising, solicitations, etc. is well known in the marketing and advertising field. . . .

Traditionally, client communications of this type have been mass-distributed using techniques

such as direct mail."  (SOF ¶¶ 1, 28; Ex. 1, '938 Patent at Title Page, Col. 1:27-38).[3]   The '938

---

[2] *See generally CyberSource II*, 2011 U.S. App. LEXIS 16871 (affirming a district court's grant of summary judgment of invalidity under Section 101 prior to claim construction); *see also Cybersource I*, 620 F. Supp. 2d at 1073 ("[R]uling on defendant's section 101 motion does not require that the claims actually be construed.").

[3] Citations to the '938 and '366 Patents are by column number (at the top of each page of the written portion of the patent) and line number (down the middle of the patent).  For example, the "'938 Patent at Col. 1:27-38" means column 1 from lines 27 to 38 and "'938 Patent at Col. 34:63 – 62:64" means column 34 line 63 through column 62 line 64.

Patent presents methods and systems for automatically preparing customized replies.  (SOF ¶ 27; Ex. 1, '938 Patent at Col. 1:19-24).

The fourteen independent claims of the '938 Patent include method and system claims. (SOF ¶¶ 3-17; Ex. 1, '938 Patent at Claims 1, 41, 52, 101, 141, 184, 226, 268, and 308-312). The elements of the independent method claims generally break down into three categories:

1) obtaining a communication from a consumer, or selecting a consumer or group of consumers;

2) "automatically generating" one or more customized "communications" or "replies;" and

3) delivering the customized communications or replies to the consumer.

(SOF ¶¶ 4-6, 8-10, 12; Ex. 1, '938 Patent at Claims 1, 41, 52, 141, 184, 226, and 268). Similarly, the independent system claims require "means" for performing each category of activity including: "means" for receiving and analyzing information, "means" for automatically generating communications or replies, and "means" for communicating the communications or replies.  (SOF ¶¶ 7, 11, 13-17; Ex. 1, '938 Patent at Claims 101, 266, and 308-312).[4]  No specific machine or apparatus is provided in the independent method claims, the independent system claims, or in the patent specification.[5]  (SOF ¶¶ 4-17; Ex.1, '938 Patent at Claims 1, 41, 52, 101, 141, 184, 226, 268, and 308-312; *see generally* Ex. 1, '938 Patent at Specification).

The dependent claims of the '938 Patent generally recite further limitations regarding the content of communications and the steps of receiving and delivering communications and

---

[4] Claim 308 of the '938 Patent purports to claim a "system" but does not even include the phrase "means for…." Rather, this claim merely recites a series of method steps following the preamble.  (*See* SOF ¶ 13; Ex. 1, '938 Patent at Claim 308).

[5] Not only do these claims fail to recite patent eligible subject matter under Section 101, the absence of a defined structure in these means plus function claims renders the claims invalid under 35 U.S.C. § 112, ¶ 6 (2006).  *See Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1332 (Fed. Cir. 2008).  Those deficiencies will be addressed, if necessary, in later motions.  For the purposes of this Motion, even if a structure were disclosed in the specification, it is irrelevant because the focus of the Section 101 analysis is on what is actually claimed in the patent.  *Bilski*, 130 S. Ct.  at 3235 ("[C]laim specification is covered by § 112, not § 101 ….").

information.  (SOF ¶¶ 18-26; Ex. 1, '938 Patent at Claims 2-40, 42-51, 53-100, 102-140, 142-183, 185-225, 227-265, 267, and 269-307).  Like the independent claims of the '938 Patent, the dependent claims do not recite any specific machine required to perform the claimed methods or systems.  In fact, the dependent claims expressly make clear that steps of the claimed method may be performed manually.  (*See, e.g.*, Ex. 1, '938 Patent at Claims 8, 48, 58, 69, 109, 152, 194, 234, and 275) (claiming receipt of responses by, *inter alia*, "at least one of mail, telephone, facsimile, hand, the internet, electronically, and non-electronically")).

### B.    The '366 Patent

The '366 Patent is entitled "Personalized Communication Documents, System And Method For Preparing Same."  (SOF ¶ 35; Ex. 2, '366 Patent at Title Page).  The '366 Patent presents methods and systems for automatically generating personalized communication documents for consumer entities.  (SOF ¶ 44; Ex. 2, '366 Patent at Col. 1:24-28).  Like the '938 Patent, the '366 Patent includes method and system claims.  (SOF ¶ 36; Ex. 2, '366 Patent at Claims 1, 28, 60, 90, and 113-114).  The elements of the independent method claims generally break down into three categories:

    1)   providing content or data for a personalized communication document;

    2)   "automatically preparing" a personalized communication;

    3)   automatically generating successive personalized communications.

(SOF ¶¶ 37-39; Ex. 2, '366 Patent at Claims 1, 28, and 60).  Similarly, the independent system claims recite "a computing system," "databases," and "software routines" for preparing and generating the customized communications.  (SOF ¶¶ 40-42 ; Ex. 2, '366 Patent at Claims 90, 113, and 114).  The dependent claims of the '366 Patent generally recite further limitations

regarding the content, formatting, and delivery of the personalized communications.  (SOF ¶ 43; *see, e.g.*, Ex. 2, '366 Patent at Claims 2-27, 29-59, 61-89, and 91-112).

## V.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY OF THE '938 AND '366 PATENTS AS A MATTER OF LAW

When analyzed using the "machine-or-transformation" test coupled with the abstract idea inquiry, it is clear that the claims of the '938 and '366 Patents do not contain patent eligible subject matter and that no reasonable claim construction alters this conclusion.  In addition to the detailed discussion below, Appendix A provides representative claim examples from the '938 and '366 Patents demonstrating the unpatenable nature of the asserted patents.   Therefore, summary judgment of invalidity is proper, as no genuine dispute of material fact exists.

### A.   The Claims Of The '938 And '366 Patents Fail The Machine-Or-Transformation Test

The machine-or-transformation test confirms that the claims of the '938 and '366 Patents are unpatentable under 35 U.S.C. § 101.  In fact, the majority of the asserted claims do not recite a machine at all, let alone a particular or specific machine that limits the claims in a meaningful way.   It is insufficient that some, but not all, claims recite a general purpose computer or software that implements the claimed process.  (*See, e.g.*, SOF ¶¶ 37, 40; Ex. 2, '366 Patent at Claim 1 and 90).  And, none of the claimed steps involve a physical transformation that is central to the asserted claims.  Furthermore, there is no reasonable claim construction that dictates a different conclusion because claim construction does not permit the patentee to rewrite its claims to satisfy Section 101.

#### 1.   The Claims Of The '938 And '336 Patents Are Not Tied To A Particular Machine

##### (a)   The '938 Patent Method Claims

All of the method claims of the '938 Patent—266 claims in all (and **62%** of the claims at issue in this lawsuit)—do not recite **any** machine or apparatus that is required to perform **any** of the claimed steps. (*See, e.g.*, SOF ¶¶ 4-6, 8-10, 12; Ex. 1, '938 Patent at Claims 1, 41, 52, 141, 184, 226, and 268). Claim 1, for example, simply recites several method steps, such as "receiving," "automatically generating," and "delivering." (SOF ¶ 4; Ex. 1, '938 Patent at Claim 1). In fact, the dependent claims make clear that these steps of "receiving" and "delivering" may be performed by "non-electronic means," by "consumer interaction with a salesperson," by "direct mail," or by "telephone." (SOF ¶¶19-27; *see, e.g.*, Ex. 1, '938 Patent at Claims 5, 8, 24, 26, and 33). That the dependent claims can be satisfied by a salesperson—clearly not a machine—establishes that a "particular" or "specialized" machine is not required by the claims.

To the extent Defendants argue that the claim term "automatically" indicates the use of a computer, this argument still fails to satisfy the machine-or-transformation test. First, the term "automatically" does not preclude human performance. Specifically, a salesperson can "automatically generate" a marketing reply by crafting it in his or her mind prior to recording it on paper and delivering it to a consumer. No claim language prohibits this type of performance of the claimed method. (*See, e.g.*, SOF ¶¶ 4-6, 8-10, 12; Ex. 1, '938 Patent at Claims 1, 41, 52, 141, 184, 226, and 268). Second, even if "automatically" suggests use of a general purpose computer, which it does not, the Supreme Court has found that claims drawn to an abstract idea are unpatentable **even when they involve a computer**. Indeed, in both *Gottschalk v. Benson* and *Parker v. Flook*, the Supreme Court invalidated such claims. *Benson*, 409 U.S. at 71-72; *Flook*, 437 U.S. at 586. Merely including the phrase "automated" into a claim drawn to an abstract idea

does not tie the claim to a particular or specialized computer in a way that imposes meaningful limits on the claim's scope.[6]

As this Court held in a similar case, "nominal recitation of a general-purpose computer in a method claim does not tie the claim to a particular machine or apparatus or save the claim from being found unpatentable under § 101."  *CLS Bank*, 768 F. Supp. 2d at 237.  And the case is even worse here, where the claims do not ***recite*** a general purpose computer at all, either nominally or specifically.  *See, e.g.*, *Graff/Ross Holdings*, 2010 WL 6274263, at * 6 (noting a factor that "weighs against validity" is "where the recited machines appear to be no more than 'object[s] on which the method operates'") (quoting USPTO Interim *Bilski* Guidance, 75 Fed. Reg. 43,922, 43,925 (July 27, 2010)); *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1154-56 (C.D. Cal. 2009) (finding asserted claim reciting a "central processor" failed to meet the "machine or transformation" test where the patent "does not specify precisely how the computer hardware and database are specially programmed") (internal quotations omitted); *FuzzySharp Techs.*, 2009 U.S. Dist. LEXIS 115493, at *15 (holding that claims involving "identifying," "comparing," "determining," and "ignoring" data are "*not* tied to any particular machine") (emphasis in original); *Ex Parte Enenkel*, No. APL 2008-2239, 2009 WL 924475, at *6 (B.P.A.I. Apr. 6, 2009) (rejecting the argument that "a claim that could require the use of a computer is automatically directed to statutory subject matter").  Because the claims do not recite any specific machine, much less any specifically programmed machine, to perform the claimed steps, the method claims of the '938 Patent fail the "machine" prong of the machine-or-transformation test.

### (b)      The '938 Patent System Claims

---

[6] In *Parker v. Flook*, the Supreme Court cautioned against such a "form over substance" approach to Section 101, which would allow any competent draftsman to avoid the statutory requirements of patentability.  437 U.S. at 590. *Cf. CyberSource II*, 2011 U.S. App. LEXIS 16871, *22-23.

Even the claims of the '938 Patent that purport to claim a "system" fail the machine prong because they recite no specific or particularized machine required to perform the claimed process steps.   These claims merely recite that the system contains a "means" of performing steps of the process.  (SOF ¶¶ 7, 11, 13-17; Ex. 1, '938 Patent at Claims 101, 266, and 308-312).  For example, independent Claim 309, set forth in Appendix A, recites a system comprising:

> "***means*** for automatically preparing" customized communications,

> "***means*** for appending each communication to a host communication,"

> "***means*** for delivering" the communications,

> "***means*** for receiving" responses, and

> "***means*** for automatically generating one or more replies."

(SOF ¶ 14; Ex. 1, '938 Patent at Claim 309) (emphasis added).[7]   However, without reciting a specific machine or apparatus that limits the claims in a meaningful way, the mere recitation of the words "system" and "means" does not save these claims from invalidity under Section 101. *See CLS Bank*, 768 F. Supp. 2d at 251 ("[S]ystem or product claims [cannot] be saved only by the fact they may nominally recite a 'computer' or 'manufacture.'"); *Bancorp Servs.*, 771 F. Supp. 2d at 1057, 1059, 1067 (finding system claims invalid under Section 101 and rejecting patentee's argument that the *Bilski* framework does not apply to system claims); *Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-cv-042, 2009 WL 6853402, at *2-3 (M.D. Fla. May 27, 2009) (finding system claims invalid under Section 101 and noting that "[s]imply because the

---

[7] Similarly, a separate independent claim requires a system with "means for receiving one or more responses," "means for automatically generating one or more replies," and "means for communicating said replies to associated consumer entities."  (SOF ¶ 11; Ex. 1, '938 Patent at Claim 266).  As with Claim 1, however, no specific machine or apparatus is set forth in the claim.  (*Id.*).

process at issue requires machines or computers to work, however, does not mean that the process or system is a machine").[8]

Further, there is no reasonable claim construction that avoids this conclusion. Claims written in "means plus function" format pursuant to 35 U.S.C. § 112, ¶ 6 must be construed "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998). To the extent that the specification of the '938 Patent recites any corresponding structure associated with the "means" elements of the claims (which it does not), it recites at most a general purpose computer operating general purpose software. (*See generally* Ex. 1, '938 Patent at Specification). As discussed above, recitation of a general purpose computer is insufficient to satisfy the machine prong of the machine-or-transformation test.[9]

In *Graff/Ross Holdings*, this Court considered claims that included "means" language (*i.e.*, an "output means") similar to that present in the '938 Patent and determined that the claims failed the machine-or-transformation test. *Graff/Ross Holdings*, 2010 WL 6274263, at *6. Despite the patentee's argument that this element (among others) imposed meaningful limits on the claim, this Court disagreed, finding that the recited elements appeared to be no more than objects on which the method operated. *Id.* As such, this Court held that the computer system, computer processor, and "output means" provided no meaningful limitation to the claims and that the claims were not patentable. *Id.* Here*,* the claimed "means" for, *inter alia*, preparing, delivering, and receiving are likewise "'so abstract and sweeping … [that they could] be performed through any existing or future-devised machinery, or even without an apparatus.'" *Id.* (quoting USPTO Interim *Bilski* Guidance, 75 Fed. Reg. at 43,925).

---

[8] *See supra* note 4.
[9] Further, regardless of how these "means plus function" elements are construed, the claims **as a whole**, are drawn to the abstract idea of automatically generating customized communications, as discussed in Section V(B) below.

In evaluating the patentability of the system claims of the '938 Patent, the Federal Circuit's recent decision in *CyberSource II* is instructive.  In *CyberSource II*, the Federal Circuit found that although claims were literally drawn to a manufacture (a "computer readable medium"), they were in essence process claims for purposes of the Section 101 analysis.  The court noted that "[r]egardless of what statutory category ('process, machine, manufacture, or composition of matter,' 35 U.S.C. § 101) a claim's language is crafted to literally invoke, ***we look to the underlying invention*** for patent-eligibility purposes."  2011 U.S. App. LEXIS 16871, at *22 (emphasis added).  The same principle should apply here.  Independent Claims 101, 266, and 308-312 purport to claim "systems."  (SOF ¶¶ 7, 11, 13-17; Ex. 1, '938 Patent at Claims 101, 266, and 308-312).  However, looking to the underlying invention, each claim is clearly drawn to a ***process*** for automatically preparing customized communications by performance of claimed steps, not to a "system" of any sort.  Claim 101, for example, recites "A system for automatically preparing a reply to a response, comprising: means for automatically analyzing information …; means for automatically generating one or more replies …; and means for communicating the replies to associated consumer entities."  (SOF ¶ 7; Ex. 1, '938 Patent at Claim 101).  The "'broad' and 'functionally-defined' nature" of these claims demonstrates that the claims are, in essence, process claims.  *CyberSource II*, 2011 U.S. App. LEXIS 16871, at *22.  Neither the preamble's inclusion of the term "system" nor the addition of the phrase "means for" prior to each method step is sufficient to disguise the true nature of these claims as process claims.  Therefore, these claims should be analyzed as process claims for purposes of patent eligibility.  And as discussed above in Section V(A)(1)(a), the steps of the claimed process are not tied to any particular machine in any meaningful way and fail the "machine" portion of the test.

### (c)        The '366 Patent Method Claims

The method claims of the '366 Patent similarly fail to recite **any** "particular" or "specialized" machine or apparatus required to perform **any** of the claimed steps and which limits the claims in a meaningful way.  While the method claims of the '366 Patent nominally recite a "computing system" for automatically preparing communications, (SOF ¶¶ 37-39; Ex. 2, '366 Patent at Claims 1, 28, and 60), the patent claims and specification demonstrate that this term encompasses solely a general purpose computer.  Specifically, the ***claim language*** lacks **any** recitation of specific programming or algorithms employed by this general purpose computing system.  (*Id.*).  Indeed, the claims simply recite a function (*e.g.*, "automatically prepar[e]"), not a recitation of ***how*** a computer may be specially programmed to achieve that function.  And while it is generally improper to read limitations disclosed in the specification into a claim, even the specification fails to detail any specific programming for the patent's computing system.  (*See generally* Ex. 2, '366 Patent).  In fact, the specification states that the "design and configuration" of the computing system processor "is not limiting."  (SOF ¶ 46; Ex. 2, '366 Patent at Col. 7:35-43).  There are many ways to draft patent claims, but the process of drafting concluded when the '366 Patent issued.  It is improper to rewrite the claims through claim construction to include specific hardware or specific programming—limitations that ***could*** have been drafted into the claims during prosecution, but were not.[10]

Because no special programming exists, the most the claimed "computing system" can be construed to cover is an unpatentable general purpose computer.  Defendants should not be permitted to real limitations into the claims.  In *Graff/Ross Holdings*, a "computer system" and "processor"—essentially the same terms at issue here—were not "particular machine[s]" because

---

[10] *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language.").

the claim did not recite that the processor was programmed in a particular way. *Graff/Ross Holdings*, 2010 WL 6274263, at *7. Likewise, consistent with Supreme Court precedent, this Court has held that the fact that method claims are implemented by a computer does not confer patentability. *CLS Bank*, 768 F. Supp. 2d at 236; *Graff/Ross Holdings*, 2010 WL 6274263, at *6. In fact, this Court has held that "nominal recitation of a general-purpose computer in a method claim does not tie the claim to a particular machine or apparatus or save the claim from being found unpatentable under § 101." *CLS Bank*, 768 F. Supp. 2d at 237. And the Federal Circuit recently explained that "we have never suggested that simply reciting the use of a computer to execute an algorithm that can be performed entirely in the human mind [is patentable]." *CyberSource II*, 2011 U.S. App. LEXIS 16871, at *23; *see also Benson*, 409 U.S. 63 (invalidating claims for method of converting binary-coded decimal numerals that was performed on a computer); *Flook*, 437 U.S. at 586 (invalidating claims for computerized calculations for adjusting an alarm limit); *DealerTrack*, 657 F. Supp. 2d at 1155-56 (finding that because the patent did "not specify precisely how the computer hardware and database are 'specially programmed,'" the claim was drawn solely to a general purpose computer and was not patentable); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 596-97 (D. Del. 2010) (holding unpatentable a claim reciting a "data processing system," a "claim database," "a display device" having multiple screens, and a "searchable claim database" which did not impose meaningful limits on the claim); *CLS Bank*, 768 F. Supp. 2d at 241. As such, the '366 Patent's method claims fail the machine prong of the machine-or-transformation test.

### (d)    The '366 Patent System Claims

Similarly, the '366 Patent system claims' recitation of a "computer system," "one or more electronic databases," and "one or more software routines" fails to tie the claims to a

specific machine or apparatus in a way that imposes a meaningful limit to the claims.  (SOF ¶¶ 40-42; Ex. 2, '366 Patent at Claims 1, 90, 113, and 114).   As discussed above, there is no indication in the claims that the "computer system" is specially programmed in any way to avoid unpatentability under Section 101.  (*Id.*).  Likewise, the claims fail to recite that the "databases" are specialized in any manner.  (*Id.*).  The claims merely recite these basic elements of a general purpose computer in the abstract and do not tie the claims to a particular machine.  (*Id.*).  *See Graff/Ross Holdings*, 2010 WL 6274263, at *7 (finding a "computer system" and "processor" were not "particular machine[s]" because the claim did not recite that the computer processor was programmed in a particular way); *Accenture*, 691 F. Supp. 2d at 597 (holding that recitations of a "database" did not meet the "machine" prong because "database" does "not imply a specific computer having any particular programming" but rather, is "descriptive of a general computer system at best").   Even the specification of the '366 Patent fails to detail any specific programming for the patent's computing system or databases.  (*See generally* Ex. 2, '366 Patent).

Likewise, the '366 Patent's claims and specification do not suggest that the "software routines" reside on any particular machine.  (SOF ¶¶ 40-42; *see generally* Ex. 2, '366 Patent). Independent claims 90, 113, and 114 of the '366 Patent purport to claim a system for preparing personalized communications comprising "one or more software routines executing on the computing system which are adapted to: [perform several method steps, such as 'automatically prepare a personalized communication document']."  (SOF ¶¶ 40-42; Ex. 2, '366 Patent at Claims 90, 113, and 114).  This recitation, however, fails to satisfy the machine prong of the machine-or-transformation test.  The Federal Circuit recently affirmed the Northern District of California's finding that claims directed to "[a] computer readable medium containing program instructions for detecting fraud in a credit card transaction" recited "nothing more than the ***idea***

-23-

of using a programmed computer to implement the process in some way." *CyberSource I*, 620 F. Supp. 2d at 1071, 1080.   The Federal Circuit stated that "merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test." *CyberSource II*, 2011 U.S. App. LEXIS 16871, at *25-26.   Because these claims merely include a software implementation of the abstract idea of preparing personalized communications, the machine prong of the machine-or-transformation test is not satisfied.

Because the processes and systems set forth in the '938 and '366 Patents are not tied to any particular machine or apparatus in a way that imposes a meaningful limitation on the claims, the claims of both the '938 and '366 Patents fail the machine prong of the machine-or-transformation test.

### 2. The Claims Of The '938 And '366 Patents Do Not Transform An Article

None of the claims of the '938 or '366 Patents effect a transformation of an article. Instead, the claims recite steps such as "automatically preparing" communications, "receiving" communications, "delivering" responses, and "providing" communication content.   (SOF ¶¶ 4-17, 37-39; Ex. 1, '938 Patent at Claims 1, 41, 52, 101, 141, 184, 226, 266, 268, and 308-312; Ex. 2, '366 Patent at Claims 1, 28, 60, 90, 113, and 114).   But generating data and delivering communications is not a transformation of an article. *Compare CyberSource II*, 2011 U.S. App. LEXIS 16871, at *10 ("The mere collection and organization of data … is insufficient to meet the transformation prong."), *with Classen Immunotherapies, Inc. v. Biogen IDEC*, Nos. 2006-1634 & 2006-1649, 2011 U.S. App. LEXIS 18126, at *24 (Fed. Cir. Aug. 31, 2011) (finding that claims for lowering the risk of chronic immune-mediated disorder were only patentable if they included "the physical step of immunization").   Indeed, this Court has found that the electronic

transformation of data, including data manipulation and any resulting magnetization of a hard drive, is not the type of "transformation" required by the test. *CLS Bank*, 768 F. Supp. 2d at 234-35.

Furthermore, that a customized marketing message may be printed onto paper (or into an electronic document) does not effect a transformation. That a customized document may be physically created *after* it is "automatically generated" is merely insignificant post-solution activity and is unpatentable.[11] The thrust of the patent claims is automatically "generating" or "preparing" a customized communication—formulating a customized product having a customized message targeted to an individual. (SOF ¶¶ 4, 37; *see, e.g.*, Ex. 1, '938 Patent at Claim 1; Ex. 1, '366 Patent at Claim 1). That the resultant message may ultimately be put on paper is not central to the purpose of the claims and does not render the abstract idea patentable. In fact, if a "transformation" were deemed to occur merely by putting ideas on a blank piece of paper, it would eviscerate the Supreme Court's rule against patenting abstract ideas. *See, e.g.*, *In re Bilski*, 545 F.3d at 963 (finding claims directed to a risk hedging method did not transform an article); *Fort Props., Inc. v. Am. Master Lease, LLC*, 609 F. Supp. 2d 1052, 1056 (C.D. Cal. 2009) (holding that the ***printing*** of deedshares after an investment instrument was created was not a transformation, and noting that deedshares, like the marketing content at issue here, did not represent a physical object); *In re Ferguson*, 558 F.3d at 1361 (holding that claims directed to a "[m]ethod of marketing a product" did not involve a transformation).

Because the '938 and '366 Patents fail to recite the transformation of any article in a way that meaningfully limits the claims, the patents-in-suit also fail the transformation prong of the machine-or-transformation test. *See In re Bilski*, 545 F.3d at 962.

---

[11] Allowing insignificant post-solution activity to render claims patentable would allow any "competent draftsman [to] attach some form of post-solution activity to almost any mathematical formula." *Flook*, 437 U.S. at 590.

**B.     The Claims Of The '938 And '366 Patents Are Drawn To An Abstract Idea**

In addition to failing the machine-or-transformation test, the '938 and '366 Patents are drawn to an abstract idea and are patent ineligible under Supreme Court precedent.    In determining whether claims are patent ineligible, the claims must be "considered as a whole." *Bilski*, 130 S. Ct. at 3259 (citing *Diehr*, 450 U.S. at 192).   When considered as a whole, the claims are drawn to the abstract idea of automatically preparing or generating a customized communication or reply in order to improve the efficacy of mass marketing communications. (*See* SOF ¶¶ 4-17, 37-42; Ex. 1, '938 Patent at Col. 1:14-24; Ex. 2, '366 Patent at Col. 1:19-28). In other words, the '938 and '366 Patents merely seek to claim a method of conducting a marketing or advertising campaign—specifically, the idea of identifying target groups and engaging in back-and-forth communications with them through automatically prepared communications.   (SOF ¶¶ 28, 30-32, 44; Ex. 1, '938 Patent at Col. 1:14-24; Ex. 2, '366 Patent at Col. 1:19-28; Ex. 3, Amendment and Reply (06/06/2003) at 59, 64; Ex. 4, Amendment and Reply (8/02/2004) at 56).   Accordingly, each claim of the '938 and '366 Patents is drawn entirely to "unpatentable mental process[es]" that "can be performed in the human mind, or by a human using a pen and paper" (*i.e.*, an advertising campaign).   *CyberSource II*, 2011 U.S. App. LEXIS 16871, at *6.

**1.     Automatically Generating Customized Marketing Communications Is An Abstract Idea—An Unpatentable Basic Business Concept**

The patents-in-suit concern sending personalized communications to customers as part of a back-and-forth marketing campaign.   Specifically, the '938 Patent states that it "relates to methods and apparatus suitable for preparing an appropriately customized reply communication to each client in a fully automated or significantly automated manner permitting large numbers (millions) of communications to be prepared and delivered quickly, efficiently, and cost

effectively." (SOF ¶ 28; Ex. 1, '938 Patent at Col. 1:20-25). Similarly, the '366 Patent states that it "relates to methods and apparatus suitable for preparing such communications in a fully automated or significantly automated manner permitting large volumes of communications to be prepared and delivered quickly, efficiently, and cost effectively." (SOF ¶ 44; Ex. 2, '366 Patent at Col. 1:24-28). The applicant confirmed as much during prosecution of the applications that led to the patents-in-suit. In fact, during prosecution of the '938 Patent, the applicant stated: "[T]he claimed embodiment is directed to customized marketing of financial products and services…. The invention allows for **individualized back-and-forth conversations** with customers as part of these **customized marketing campaigns**."[12] (*See* SOF ¶ 32; Ex. 4, Amendment and Reply (08/02/2004) at 56).[13]

Yet this can hardly be deemed an "invention," and certainly not a patentable one. In fact, the claims of the '938 and '366 Patents recite no more than the conglomeration of abstract ideas—the application of one abstract idea, like demographic or customer-specific information, to a second abstract idea, a marketing pitch. This is done using abstract mechanisms (*e.g.*, **any** automation) and results in no more than an abstract legal or financial product (*e.g.*, a customized

---

[12] In responding to a prior art rejection, the applicant emphasized that the prior art did not teach the mass marketing aspect of the claims (*see, e.g.*, SOF ¶ 33; Ex. 5, Amendment and Reply (12/21/2004) at 56 ("Horowitz does not teach or suggest 'responses being in response to **mass marketing communications** …'") (emphasis added)) or a "**conversational**' feature … which enables the back-and-forth exchange with the consumer." (*See, e.g.*, SOF ¶ 31; Ex. 3, Amendment and Reply (06/06/2003) at 64) (emphasis added). The **idea** of a mass marketing campaign and the **idea** of a two-way conversation with a customer are not patent-eligible. *See Graff/Ross Holdings*, 2010 WL 6274263, at *7 (finding that claims reciting "[c]omputing a price to sell fixed income assets and generating a financial analysis" were directed to an abstract idea and noting that "general economic concepts [] cannot be patented"); *CLS Bank*, 768 F. Supp. 2d at 243-44, 252 (finding method and system claims directed to employing an intermediary to facilitate simultaneous exchange of obligations to be an unpatentable abstract idea).

[13] The applicant made similar comments during prosecution of related patents. For example, during reexamination of U.S. Patent No. 5,987,434, a parent to the '938 and '366 Patents, titled "Apparatus And Method For Transacting Marketing And Sales Of Financial Products," the patent owner stated that the patent discloses a marketing system that "employs methods and apparatuses that start with a customer and select and/or design the appropriate product for that customer." (SOF ¶ 51; Ex. 8, Response By Patent Owner (8/21/2008) from the '434 Reexam at 78). During the reexamination of U.S. Patent No. 6,076,072, a parent to the '938 and '366 Patents, the patent owner also distinguished prior art by stating that the prior art's "passive approach again, is different from Patentee's active approach, which creates a communication specifically for a particular client and then sends it to that client." (SOF ¶ 50; Ex. 7, Response By Patent Owner (07/20/2009) from the '072 Reexam at 49).

marketing message intended to create a legal or financial relationship).   Such manipulations of

abstract ideas are not patentable.   *In re Bilski*, 545 F.3d at 963-64 (emphasis added) ("Purported

transformations or manipulations simply of public or private legal obligations or relationships,

business risks, or ***other such abstractions*** cannot meet the test because they are not physical

objects or substances, and they are not representative of physical objects or substances.").

Instead, the law is clear that "basic business or financial concept[s]" cannot be patented.

*CLS Bank*, 768 F. Supp. 2d at 243.   A marketing campaign based on "back-and-forth

conversations" is plainly a basic business concept that is not entitled to patent protection.   *See*

*Bilski*, 130 S. Ct. at 3231 (finding unpatentable claims directed to the abstract idea of "hedging

risk"); *CLS Bank*, 768 F. Supp. 2d at 243 (finding unpatentable claims directed to the abstract

idea of employing an intermediary to facilitate simultaneous exchange of obligations);

*Graff/Ross Holdings*, 2010 WL 6274263, at *6 (finding that "'how business should be

conducted,' is a general concept that is unlikely patent-eligible.") (quoting USPTO Interim *Bilski*

Guidance, 75 Fed. Reg. at 43,296); *Bancorp Servs.*, 771 F. Supp. 2d at 1057, 1067 (finding

unpatentable claims directed to the abstract idea of "managing a life insurance policy"); *Perfect*

*Web Techs.*, 2008 U.S. Dist. LEXIS 108392, at *24-31 (finding unpatentable claims directed to

the abstract idea of "managing bulk e-mail distribution").   Merely cobbling together various

abstract ideas does not create a patentable invention.

Those recent Federal Circuit decisions finding claims valid under Section 101 are

distinguishable from the facts here.   For example, the claims in *Classen Immunotherapies*, 2011

U.S. App. LEXIS 18126, involved the immunization of a patient—a physical implementation of

an abstract idea.   *Id.* at *24.   Here, however, "automatically generating" a customized

communication is not a similar physical implementation.   As discussed above, the instant claims

involve the mere manipulation of abstractions—demographic information and marketing pitches—not a physical implementation.  Likewise irrelevant is *Ultramercial, LLC v. Hulu, LLC*.  *Ultramercial* presented a unique case where its claims **specifically recited** a complicated multi-step process that required significant and complex computer programming.  *Ultramercial*, 2011 U.S. App. LEXIS 19048, at *2-3.  Here, those claims that recite a computing system at all, by contrast, require at most basic database and word processing programs—nothing "specialized."  The recitation of a general purpose computer (with basic computer programming) does not confer patentability.  *Benson*, 409 U.S. at 71-72; *Flook*, 437 U.S. at 586, 596.

> ### 2.    The Claims Remain Invalid Under Section 101 Even Though A *Minority* Of Claims May Involve A General Purpose Computer

That the abstract idea of automated customized marketing may be performed on a general purpose computer (in a **minority** of claims) does not save the claims from invalidity under Section 101.  *See, e.g.*, *Graff/Ross Holdings*, 2010 WL 6274263, at *6 (finding unpatentable claim that "recites nothing more than an abstract idea on a general purpose computer").  To the contrary, the Supreme Court has found that claims drawn to an abstract idea remain unpatentable **even when they involve a computer**.  In *Gottschalk v. Benson*, 409 U.S. 63 (1972), the Supreme Court held invalid a method for converting binary-coded decimal numerals even though it was performed on a computer.  And in *Parker v. Flook*, the Supreme Court invalidated claims directed to adjustment of an alarm limit that was "primarily useful for computerized calculations producing automatic adjustments in alarm settings."  *Flook*, 437 U.S. at 586.  Merely including the phrase "computing system" does not render abstract ideas patentable.[14]  (SOF ¶¶ 37-42; Ex. 2, '366 Patent at Claims 1, 28, 60, 90, and 113-114).  Likewise, that the claims recite "automatic[]" performance of certain claim elements does not save the claims.  (SOF ¶¶ 4-17,

---

[14] In *Parker v. Flook*, the Court cautioned against such a "form over substance" approach to Section 101, which would allow any competent draftsman to avoid the statutory requirements of patentability.  *Flook*, 437 U.S. at 590.

37-40; *see, e.g.*, Ex. 1, '938 Patent at Claim 1; Ex. 2, '366 Patent at Claim 1).   Simply

'automating' an abstract idea does not render that idea patentable, just as linking an abstract idea

to a general purpose computer does not render it patentable.  *See Benson*, 409 U.S. at 72.

        The Federal Circuit's recent decision in *CyberSource II* is instructive.  The claims at

issue in *CyberSource* recited a method and a "computer readable medium" related to verifying

the validity of credit card transactions over the Internet.  The Court found that the claims "simply

require[] one to 'obtain and compare intangible data pertinent to business risks'" and were so

broad as to encompass any means of performing the stated goal of the claim and were

unpatentable.  Here, the claims of the '938 and '366 Patents simply require one to engage in

personalized communications with a customer, as part of a mass marketing campaign.  Further,

the fact that a computer or "software" is recited in some purported "system" claims, as discussed

in Section V(A)(1)(d) above, does not save the claims from their status as an abstract idea.

*CyberSource II*, 2011 U.S. App. LEXIS 16871, at *20-21.

        Furthermore, this Court treated a similarly unpatentable abstract idea in *CLS Bank*.

There, this Court found unpatentable method claims drawn to the abstract idea of "employing an

intermediary to facilitate simultaneous exchange of obligations in order to minimize risk"

because the claims "effectively preempt the use of an electronic intermediary to guarantee

exchanges across an incredible swath of the economic sector."  *CLS Bank*, 768 F. Supp. 2d at

243, 245-46.  Likewise, this Court found that "[d]espite the fact that the … system claims and

Alice's asserted method claims are directed to different patent eligible categories under §101,

their preemptive effect would be largely one and the same."  *Id.* at 252.  Similarly here, the

claims at issue, whether purportedly drawn to a method or a "system," concern the same

-30-

underlying abstract idea of automatically generating customized communications and have the same preemptive effect.

### 3.    Neither Specific Applications Of An Abstract Idea, Nor Field-Of-Use Limitations, Avoid Invalidity Under Section 101

Any practical benefit or "specific application" that may arise from the instant claims does not save the claims from invalidity.  The specifications of the '938 and '366 Patents purport to solve problems associated with the "relatively significant cost" of mass-distribution communications and the "relatively low purchase response rate" that tends to result.  (*See* SOF ¶¶ 29, 45; Ex. 1, '938 Patent at Col. 1:37-53; Ex. 2, '366 Patent at Col. 1:40-48).  Indeed, during prosecution of a parent to the '938 and '366 Patents, the applicant stated that the invention "solves the 'delivery cost' problem associated with marketing campaigns."  (SOF ¶ 49; Ex. 6, Response To Office Action (11/4/1999) from the '072 Patent File History at 6-7).  However, the fact that the communication methods claimed in the '938 and '366 Patent may produce a practical result or may constitute an improvement over prior art methods of mass communication does not render the abstract idea patentable.  *Bancorp Servs.*, 771 F. Supp. 2d at 1066-67 ("But, the fact that the claimed invention represents an improvement over existing methods is not sufficient to render an abstract process patentable.").

That an abstract idea is used for a specific purpose or with a specific application is, alone, insufficient to save the idea from unpatentability because nearly all abstract ideas have some specific purpose or specific application.  *Id.* at 1067 ("The inventions in *Bilski*, *Benson*, and *Flook* arguably all addressed a need in the art and yet were determined to be drawn to abstract ideas and thus were unpatentable.") (internal citations omitted).  The Supreme Court in *Parker v. Flook* explained that where a claim is directed to an abstract idea, "'even if the solution is for a specific purpose, the claimed method is nonstatutory.'"  437 U.S. at 595 (citation omitted).  In

other words, it is error to assume that "if a process application implements a principle in some specific fashion, it automatically falls within the patentable subject matter of § 101." *Id.* at 593.

Likewise, that the claims may be limited to use with "financial products" is irrelevant.[15] During prosecution of the '938 Patent, the applicant stated that "the invention is directed to automated systems and methods for conversing with customers…. Such conversation is performed *for the purpose of selling financial products and/or services* to the customers." (*See* SOF ¶ 30; Ex. 3, Amendment and Reply (06/06/2003) at 59) (emphasis added).  However, this does not avoid the conclusion that the claims lack patent eligible subject matter.  "Field of use" limitations do not render an unpatentable abstract idea patentable because the claims would effectively preempt the use of the idea.  *In re Bilski*, 545 F.3d at 957 ("Pre-emption of all uses of a fundamental principle in all fields and pre-emption of all uses of the principle in only one field both indicate that the claim is not limited to a particular application of the principle."); *see, e.g., Flook*, 437 U.S. at 586.

In *CLS Bank*, this Court considered the issues of specific application of an abstract idea, preemption, and field of use limitations.  There, the claims were directed to a method and system of exchanging obligations through an intermediary.  The Court held that such a "basic business or financial concept" was an abstract idea, unpatentable under Section 101.  In reaching its conclusion, the Court considered the "preemptive power" of the claim and held that patenting such a basic concept would effectively preempt use of an intermediary to guarantee exchanges across "an incredible swath" of the economic sector.  *CLS Bank*, 768 F. Supp. 2d at 245-46.

---

[15] As an initial matter, it is unclear whether the patent applicant believed the claims to be so limited.  During prosecution of a parent application to the '938 and '366 Patents, the applicant stated that the invention is *not* limited to financial services products, but may be used by, for example, utility companies.  During prosecution of U.S. Patent No. 6,076,072, the applicant stated: "*Obviously, the technology can also be used by with* [*sic*] *other establishments* that send out routine statements, credit card issuers, utility companies, and any other organization that routinely sends out communications to its own clients (or others)."  (SOF ¶ 49; Ex. 6, Response To Office Action (11/4/1999) from the '072 Patent File History at 6-7) (emphasis added).

Further, the Court noted that although "[t]here may be no dispute that the methods claimed engender a practical result[,] this fact alone does not rescue the claims from the realm of abstraction." *Id*. at 244.  Likewise, the fact that the abstract idea was limited to one field of use did not save the claim.  *Id.* at 247.  The same is true here.  The claims at issue would preempt a basic business concept—the use of marketing campaigns based on back-and-forth communications with customers.  That the claims may have a specific application in a specific field of use is irrelevant.  Thus, as in *CLS Bank*, the claims of the '938 and '366 Patents are directed to non-patentable abstract ideas and are invalid under Section 101.

## VI.    CONCLUSION

The claims of the '938 and '366 Patents fail the "machine-or-transformation" test and, when considered as a whole as required under Section 101, are drawn to the abstract idea of automatically generating a communication for a mass marketing campaign.  The claims therefore do not constitute patent eligible subject matter and are invalid under 35 U.S.C. § 101.  This conclusion will not change under any reasonable claim construction.  Furthermore, the Federal Circuit has affirmed the grant of summary judgment of invalidity prior to claim construction.  Accordingly, no genuine dispute of material fact exists and summary judgment is proper at this time.

Respectfully submitted,

Dated: October 19, 2011                By: /s/ James R. Myers

James R. Myers (D.C. Bar No. 231993)
ROPES & GRAY, LLP
One Metro Center
700 12th Street
Washington, DC 20005
Telephone:  (202)-508-4600
Facsimile:  (202)-508-4650
James.Myers@ropesgray.com

Attorneys for Plaintiffs,
Liberty Mutual Personal Insurance
Company and Liberty Mutual Group, Inc.

# APPENDIX A

Independent Claims 52 and 309 of the '938 Patent and independent Claims 1 and 90 of the '366 Patent are produced below, with the data collection/selection elements of the claim in yellow, the communication generation elements in green, and the communication delivery elements in blue.[16]  This shading illustrates that the asserted claims are directed to abstract ideas related to document preparation and delivery, which do not satisfy the *Bilski* requirements.

| '938 Patent | |
|---|---|
| 52.   A method for automatically preparing customized communications for a plurality of consumer entities, and replying to responses from consumer entities with customized replies, the method comprising: automatically preparing a mass marketing customized communication for each consumer entity, said communication comprising information relating to an offering for one or more financial products or services being offered as part of a mass marketing campaign; delivering each communication to a respective one of the plurality of consumer entities; receiving one or more responses from at least some consumer entities, said responses comprising nonpurchase requests and being in response to communications; automatically generating one or more replies for at least some of the responses or subsequent responses, each of said replies being generated prior to receipt from a consumer entity of a purchase commitment of said one or more financial products or services being offered as part of said mass marketing campaign, each reply customized for a consumer entity using other than one or more of name, address and account number of said consumer entity, and responsive to a nonpurchase request received from said consumer entity; and delivering said replies to associated consumer entities. | 309.   A system for automatically preparing customized communications for consumer entities, and replying to responses from consumer entities with customized replies, comprising: means for automatically preparing a plurality of customized mass marketing communications, each communication comprising information relating to an offering for one or more financial products or services being offered as part of a mass marketing campaign; means for appending each communication to a host communication to form a plurality of combined communications; means for delivering each combined communication to a consumer entity; means for receiving one or more responses from at least some consumer entities, said responses comprising nonpurchase requests and being in response to combined communications; means for automatically generating one or more replies to at least some of the responses or subsequent responses, each of said replies being generated prior to receipt from a consumer entity of a purchase commitment of said one or more financial products or services being offered as part of said mass marketing campaign, each reply customized for a consumer entity using other than one or more of name, address and account number of said consumer entity, and responsive to a nonpurchase request received from said consumer entity; and means for delivering the replies to associated consumer entities. |
| '366 Patent | |
| 1.   A method of preparing personalized communication documents for a plurality of consumer entities, the | 90.   A system for preparing personalized communication documents for a plurality of consumer entities |

_____

[16] When printed in black and white, data collection/selection elements in yellow will show up as a light shade of gray, communication generation elements in green will show up as a dark shade of gray, and communication delivery elements in blue will show up in a medium shade of gray.

| method comprising the steps of: | comprising: |
|---|---|
| a) providing financial product and/or financial service content for the personalized communication documents, which financial product and/or financial service content includes a first set of alternative descriptions, characteristics and/or identifications associated with at least a first financial product and/or financial service; | a computing system;[17] |
| | one or more electronic databases coupled to the computing system; |
| | one or more software routines executing on the computer system which are adapted to: |
| | a) retrieve financial product and/or financial service content for the personalized communication documents from said one or more electronic databases, which financial product and/or financial service content includes a first set of alternative descriptions, characteristics and/or identifications associated with at least a first financial product and/or financial service; |
| b) automatically preparing a personalized communication document for a plurality of consumer entities with a computing system, each personalized communication document including an identifying section adapted to present identifying content to identify a consumer entity from the plurality of consumer entities, and a separate personalized section adapted to present at least some personalized content relating to an offering for said consumer entity of said first financial product and/or financial service; | b) automatically prepare a personalized communication document for a plurality of consumer entities, said personalized communication document including an identifying section adapted to present identifying content to identify a consumer entity from the plurality of consumer entities, and a separate personalized section adapted to present at least some personalized content relating to an offering for said consumer entity of said first financial product and/or financial service; |
| wherein said personalized content presented for said offering includes at least one or more of said first set of alternative descriptions, characteristics and/or identifications associated with said at least first financial product and/or financial service; | wherein said personalized content presented for said offering includes at least one or more of said first set of alternative descriptions, characteristics and/or identifications associated with said at least first financial product and/or financial service; |
| c) automatically generating successive personalized communication documents with said computing system, wherein at least one personalized section includes personalized content with respect to at least said first financial product and/or financial service different from a second personalized content prepared for a second consumer entity. | c) automatically generate successive personalized communication documents, wherein at least one personalized section includes personalized content with respect to at least said first financial product and/or financial service different from a second personalized content prepared for a second consumer entity. |

---

[17] As discussed *supra* at Section V(A)(1)(c)-(d), the "computing system," "electronic databases," and "software routines" referenced in the system claims of the '366 Patent are merely citations to general purpose computers, which do not qualify as patentable subject matter.

-37-

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 19th day of October, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system (which automatically sent an electronic notification of such filing to counsel of record) to Defendants, Phoenix Licensing, L.L.C. and LPL Licensing, L.L.C.


Dated:  October 19, 2011                    By:  /s/ James R. Myers
                                                  James R. Myers